IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12-CV-131-RJC-DCK

| | |
|---|---|
| ARK PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| JUSTIN.TV, INC., YOUTUBE, LLC, ) | |
| and YOUTUBE, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Joint Motion To Dismiss" (Document No. 16). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the motion, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. PROCEDURAL BACKGROUND

Ark Promotions, Inc. ("Plaintiff" or "Ark") filed its "Complaint" in this Court on February 27, 2012, against YouTube, LLC, YouTube, Inc. (collectively "YouTube") and Justin.tv, Inc. ("Justin.tv") (all together "Defendants"). (Document No. 1). Plaintiff's claims arise from Defendants' alleged unauthorized reception and re-transmission of Plaintiff's copyrighted pay-per-view live broadcast of a boxing match between Evander Holyfield and Sherman Williams on January 22, 2011. Id.

On April 20, 2012, Defendants filed their "...Joint Motion To Dismiss" (Document No. 16) and "Memorandum Of Law In Support Of Defendants' Joint Motion To Dismiss" (Document No. 17). On May 7, 2012, "Plaintiff's Opposition To Defendants' Joint Motion To Dismiss" (Document

No. 20) was filed. Defendants' "Reply In Support Of Defendants' Joint Motion To Dismiss" (Document No. 21) was timely filed on May 17, 2012. As such, the pending motion is now ripe for review, and for a recommendation for disposition to the presiding district judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual

2

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Viewing the Complaint in the light most favorable to Plaintiff supports the following summary of pertinent facts. Plaintiff was the promoter of a boxing match between Holyfield and Williams on January 22, 2011, at the Greenbrier Resort in White Sulphur Springs, West Virginia. (Document No. 1, p.3). As such, Plaintiff sold tickets to watch the boxing match in person and licensed the rights to certain entities to distribute the live television broadcast, via cable television and satellite broadcast to residential and commercial viewers on a pay-per-view basis. Id. Prior to the boxing match, Plaintiff made a significant investment in advertising and promoting the boxing match, paying the fighters, and producing the live televison broadcast ("Live Broadcast"). Id. Plaintiff expected to recoup its investment through pay-per-view sales. Id. Plaintiff is the lawful owner of the Live Broadcast and registered its copyright in the Live Broadcast with the United States Copyright Office. (Document No. 1, p.4).

According to the Complaint, unauthorized live video streams of the Live Broadcast were retransmitted to www.justin.tv by users who had access to the broadcast signal transmitted by an authorized cable or satellite provider. (Document No. 1, p.5). The unauthorized live video streams were transmitted over the www.justin.tv website simultaneously with the authorized transmission of the Live Broadcast. Id. Plaintiff asserts that prior to the boxing match, and during the boxing match, it alerted Justin.tv to the fact that its users planned to, and did in fact, transmit the Live Broadcast through the www.justin.tv website. (Document No. 1, pp.4-5). Plaintiff further asserts that Justin.tv took no action to stop the unauthorized reception and transmission, and as a result at

least thousands of people viewed the Live Broadcast without proper payment to Plaintiff.  Id.

The Complaint also provides that on or about January 22-23, 2011, YouTube received, transmitted, published, reproduced, distributed and/or displayed the Live Broadcast on its www.youtube.com website.  (Document No. 1, p.6).  Consequently, Plaintiff contends that at least thousands of people were able to view the Live Broadcast on YouTube's website without proper payment to Plaintiff.  Id.

Based on the foregoing, Plaintiff's Complaint asserts nine causes of action.  (Document No. 1).  "Defendants' Joint Motion To Dismiss" seeks dismissal of Plaintiff's first, second, and seventh causes of action in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Document No. 16).  The first cause of action alleges unauthorized reception of cable service in violation of 47 U.S.C. § 553;  the second cause of action alleges unauthorized publication or use of communications in violation of 47 U.S.C. § 605;  and the seventh cause of action alleges inducement of copyright infringement.  (Document No. 1, pp.7-8, 11-12).  The other six causes of action assert additional claims of copyright infringement.  (Document No. 1, 9-14).

Defendants contend that the first, second and seventh claims should be dismissed because: (1) the Cable Communications Policy Act ("Communications Act") does not apply to the conduct alleged by Plaintiff;  (2) even if the Communications Act were applicable here, the claims under that statute would be barred by Section 230(c) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230;  and (3)  the claim for inducement lacks "any factual allegations suggesting that Defendants took any 'affirmative steps' intended to encourage copyright infringement by their users." (Document No. 17, pp.2-3).

**A. First and Second Causes Of Action**

Plaintiff contends in its First Cause Of Action that Defendants "intercepted or received, or

4

assisted in intercepting or receiving, Plaintiff's Live Broadcast" without authorization. (Document No. 1, p.7). Plaintiff further contends that Defendants conduct "constitutes a violation of 47 U.S.C. § 553." Id.

Pursuant to the Communications Act, 47 U.S.C. § 553:

> **(1)** No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> **(2)** For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C. § 553 (a)(1-2).

In its Second Cause Of Action, Plaintiff contends that Defendants received, or assisted in receiving Plaintiff's Live Broadcast, or the information contained therein, and divulged or published the existence, contents, substance, purport, effect or meaning of the Live Broadcast to others without authorization. (Document No. 1, p.8). Plaintiff further contends that Defendants acted for their own benefit, or for the benefit of others not entitled thereto. Id. This claim also asserts that Defendants "received *from their users* Plaintiff's Live Broadcast." Id. (emphasis added). Plaintiff concludes that this conduct violates 47 U.S.C. § 605. Id.

Pursuant to 47 U.S.C. § 605 of the Communications Act:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any

> intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605 (a).

### 1. Applicability of Communications Act

In support of their motion to dismiss, Defendants first argue that the Communications Act claims must be dismissed because the alleged actions do not violate the Communications Act. (Document No. 17, pp.4-6). Defendants specifically contend that "section 605 applies to interception or receipt of cable television signals 'before they begin to travel through the cable,' while section 553 applies to the 'interception or receipt of cable service transmissions at the point in the system that the transmission is carried by coaxial cable or wire.'" (Document No. 17, p.6) (quoting Kingvision Pay Per View, Ltd. v. Owens, 982 F. Supp. 803, 805 (D. Kan. 1997) and Cablevision of Mich., Inc. v. Sports Palace, Inc., 27 F.3d 566, 1994 WL 245584, at *3 (6th Cir. 1994) ("In light of the legislative history, Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system.")). Defendants conclude that these provisions "have nothing to do with the operation of a website onto which third-party users may upload video[] clips that have already been transmitted or broadcasted." (Document No. 17, pp.6-7).

Defendants rely heavily on the recent decision Zuffa, LLC v. Justin.tv, 838 F.Supp.2d 1102 (D.Nev. 2012) which involved very similar facts and arguments to the instant case, as well as allegations against one of the same defendants, Justin.tv. (Document No. 17, pp.6-7). In Zuffa, the

6

plaintiff alleged that "Justin.tv users streamed a particular bout for which Zuffa had a copyright using Justin.tv's services." Zuffa, 838 F.Supp.2d at 1103 (emphasis added). "Zuffa brought suit based on the live streaming of the UFC 121 fight through Justin.tv's service." Id. Zuffa's 12 claims included allegations of various types of copyright and trademark infringement, and that Justin.tv had "violated various laws related to cable and satellite theft." Id.

Defendants argue that Plaintiff's "Communications Act claims here are indistinguishable from those in Zuffa, and fail for the same reason." (Document No. 17, p.7). Defendants reference the following pertinent language from the Zuffa decision:

> Zuffa does not allege that Justin.tv actually intercepted or received a cable or satellite broadcast, i.e., a television signal from a television cable operator over cable infrastructure or a radio signal transmitted by satellite. Rather, Zuffa alleges that Justin.tv users received a cable or satellite broadcast (without allegations to the legality of the reception) and then sent a digital copy of that broadcast by internet video stream to Justin.tv for general public availability. In essence, Zuffa alleges that Justin.tv's users copied Zuffa's UFC event and then rebroadcast the UFC event over the internet. This is not the type of conduct properly addressed by the Communications Act, but by copyright law (and, potentially, trademark law) because Justin.tv had no relationship with the original cable or satellite signal: by the allegations, Justin.tv did not receive or intercept any actual cable or satellite signal or broadcast. The Court finds no evidence in the statutory language, other cases, or legislative history that the Communications Act addresses this type of conduct or was meant to bolster or act as a separate type of copyright claim. The Court refuses to extend the law in this manner. Thus, the Court dismisses Zuffa's eleventh and twelfth claims.

Zuffa, 838 F.Supp.2d at 1106-07 (footnotes omitted).

Another case cited by Defendants is Cablevision Of Michigan, Inc. v. Sports Palace, Inc., 27 F.3d 566, 1994 WL 245584 (6th Cir. 1994). In that case, the plaintiff claimed that the defendant "improperly broadcast a pay-per-view boxing match to patrons of its bar, the Sports Forum." Cablevision, 1994 WL 245584 at *1. On October 25, 1990, the defendant bar was given a series of

7

videotapes by an occasional patron that allowed the bar to show a fight between Evander Holyfield and James "Buster" Douglas "while it was still in progress." Id. Cablevision had obtained exclusive rights to broadcast that fight, and the "Sports Forum did not purchase the right to receive the boxing match." Id.

The Sixth Circuit observed that "[i]n light of the legislative history, Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system." Cablevision, 1994 WL 245584 at *3. The court further opined that where the defendant was not "tapping into a cable transmission path . . . the defendant's conduct fell outside the reach of Section 553 " and because "any rebroadcast of cable programming via videotape is not an interception within the meaning of Section 605(a)" the district court had properly granted summary judgment to the defendant. Cablevision, 1994 WL 245584 at *3-4. More specifically, the Sixth Circuit concluded that "[a]s there is no suggestion here that Sports Forum seized cable signals in transition or waylaid satellite signals, the district court properly concluded that Cablevision's injuries were not redressable under the Communications Act." Cablevision, 1994 WL 245584 at *4.

Plaintiff here argues that these cases cited by Defendants are distinguishable. (Document No. 20, pp.7-10). First, Plaintiff asserts that the Kingvision decision expressly did not reach the scope of §§ 553 and 605, and instead decided there was insufficient evidence to determine whether either provision of the Communications Act had been violated. (Document No. 20, pp.7-8)(citing Kingvision, 982 F.Supp. at 805). However, Plaintiff acknowledges that a decision cited by Kingvision does hold that there "could be no violation because programming cannot be intercepted after it reaches its destination, and cannot be received without authorization by a subscriber because a subscriber is always authorized." (Document No. 20, p.8) (citing That's Entertainment, Inc. v.

8

Anciano's, Inc., 1996 WL 514989 (N.D.Ill. Sept. 6, 1996)). Plaintiff argues that the "holding in That's Entertainment is distinguishable from the case at bar because Plaintiff has alleged *a virtually contemporaneous retransmission* of a live broadcast, not a delayed videotape replay." Id. (emphasis added).

Plaintiff distinguishes the Cablevision decision "because it involves a videotaped rebroadcast." Id. Plaintiff further asserts that the "foundational basis" of the Sixth Circuit's holding in Cablevision is "flawed" because the "court mistakenly relied on" certain language in House Report 98-434. Id. Plaintiff argues that the Sixth Circuit and Defendants mistakenly "read the relevant portion of House Report 98-934 to dictate that § 553 only applies to the interception of signals 'actually being distributed over a cable system.'" (Document No. 20, pp.8-9) (citing H.R. Rep. 98-934, 1984 U.S.C.C.A.N. 4655, 1984 WL 37495). Plaintiff contends that § 553 "prohibits the unauthorized interception and reception of any video programming carried over a cable network, without limitation on when, where or how the video programming was intercepted or received." (Document No. 20, p.4).

The Cablevision court affirmed the district court's finding that

> Sports Forum neither intercepted nor received a "one-way transmission" of video programming from Cablevision, as required in order for a violation of § 553 to have occurred. Similarly, stated in terms of the third sentence of § 605(a), Sports Forum likewise did not "receive or assist in receiving any interstate or foreign communication by radio" of Cablevision as required in order for a violation of the third sentence of § 605(a) to have occurred.

Cablevision, 1994 WL 245584 at *2. The undersigned further notes that the Sixth Circuit's view appears consistent with the Seventh Circuit, as described in TCI Cablevision of New England v. Pier House Inn, Inc.:

> The Norris court found the only plausible and consistent

9

> interpretation of the entire legislative history was "that Congress intended for § 605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for § 553 to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system." Id. at 466. This court finds the Seventh Circuit's holding both legally sound and logically compelling.

TCI Cablevision of New England v. Pier House Inn, Inc., 930 F.Supp. 727, 737 (D.R.I. 1996) (quoting United States v. Norris, 88 F.3d 462, 466 (7th Cir.1996)). At this point, the undersigned finds the Sixth and Seventh Circuit's reasoning more persuasive than Plaintiff's interpretation of the statute.

Finally, Plaintiff contends that the Zuffa decision is distinguishable from the instant case. (Document No. 20, pp.9-10). Although Plaintiff concedes that "the case at bar and the Zuffa case are very similar," it urges this Court not to adopt the Zuffa reasoning "because of that opinion's flawed reliance on an assertion, unsupported by the pleadings that Justin.tv only received a copy of the live broadcast." Id.

The undersigned recognizes that the Zuffa decision describes the alleged actions of the Justin.tv users as sending a "digital copy of that broadcast by internet video stream." Zuffa, 838 F.Supp.2d at 1107. However, the undersigned finds that whether or not the users' actions were accurately described as copying a signal, both that case and this one allege essentially the same activity. In Zuffa, the Justin.tv users received a cable or satellite broadcast which they rebroadcast "by internet video stream to Justin.tv for general public availability." Id. Here, Plaintiff alleges that "live video streams were retransmitted to the www.justin.tv site from users who had access to the broadcast signal transmitted by an authorized cable or satellite television provider." (Document No. 1, p.5).

Whether or not the Justin.tv users' rebroadcast or retransmission of a fight involved sending

a digital copy, the undersigned is persuaded that the court's critical finding – that the Communications Act is inapplicable where (1) "Justin.tv had no relationship with the original cable or satellite signal" and (2) "by the allegations, Justin.tv did not receive or intercept any actual cable or satellite signal or broadcast" – remains unchanged. Zuffa, 838 F.Supp.2d at 1107  Moreover, based on the great similarities between the cases, the undersigned finds that holding persuasive here.

The undersigned is not persuaded by Plaintiff's attempts to distinguish the <u>Cablevision</u> and <u>That's Entertainment</u> decisions, or its argument that this Court should find the Communications Act applicable to the facts of this case. Although those cases involved some delay in a rebroadcast, like Zuffa and the instant case, they also involved an intermediary party who actually received a cable or satellite communication, and then took some action to rebroadcast or retransmit that communication to another party. Plaintiff urges this Court to disavow the above cases, but fails to cite any case supporting its position, much less one with facts as similar as those in <u>Zuffa</u> and <u>Cablevision</u>.

Without further support, the undersigned is reluctant to conclude that the Communication Act is inapplicable to a retransmission or rebroadcast that is delayed by minutes or seconds, but is applicable to a retransmission that is purportedly "simultaneous." In either situation, it does not appear that the Communications Act was intended by Congress, or has been interpreted by the courts, as imposing liability on a party who receives a retransmission from a user who received or intercepted a broadcast signal from a cable or satellite provider.

Another recent case the parties do not address further bolsters Defendants' argument. In <u>Premium Sports, Inc. v. Connell</u>, the district court considered a single claim for violation of § 605(a) where a plaintiff was the exclusive licensee for programming of a Scotland v. Wales soccer game, and defendants were not authorized by plaintiff to receive the broadcast. <u>Premium Sports,</u> 2012 WL

691891 at *1 (S.D.N.Y. March 1, 2012) reconsid. denied 2012 WL 2878085 (S.D.N.Y. July 11, 2012). The defendants in Premium Sports actually received the signal in the United States from a friend in Dublin, Ireland. Id. The Dublin friend "received a broadcast of the game on his television in Dublin from the company "RTE" and, in turn, sent it onto defendants" via Slingbox. Id. The court noted that it was important that defendants' friend received the original transmission, and that "subsequent to that initial receipt, the friend in turn transmitted the programming to defendants." Id.

Although Premium Sports is distinguishable from the instant case because the defendants' friend apparently did not get the original transmission from the plaintiff, the "critical and dispositive legal point" that there must be an "interception" of a signal transmission to be in violation of § 605(a) still applies here. Premium Sports, 2012 WL 691891 at *2. "The case law leaves no doubt that the term "intercept" or "interception" means to stop, seize, or interrupt prior to arrival; or taking or seizing before arrival at the destined place." Id. (citations omitted). There is no allegation that defendants' Dublin friend (or the users in the instant case), *intercepted* a transmission.[1] Moreover, in both Premium Sports and the instant case, there is no allegation that the initial receipt of the broadcast was unauthorized or improper. In both cases, the initial recipient of the sports event retransmitted the broadcast to another party, the defendants in these lawsuits. The court in Premium Sports found that by the time the soccer game reached defendants, "by whatever technology employed, there is no indication – and no argument has been made – that the transmission of the game was via the original satellite signal." Premium Sports, 2012 WL 691891 at *3. The court

---

[1] Plaintiff's First Cause of Action contends "Defendants have intercepted or received, or assisted in intercepting or receiving, Plaintiff's Live Broadcast." (Document No. 1, ¶ 40). However, this statement is inconsistent with Plaintiff's specific factual allegations that Defendants *received* a retransmission of the Live Broadcast from their users. (Document No. 1, ¶¶ 20, 25-26, 29, 36).

12

concluded that plaintiff's claims failed as a matter of law. Id.

Even if an interception is not a prerequisite to a § 605 violation, it still appears that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff argues that § 605 is violated because the statute provides in part that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication *by radio* and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." (Document No. 20, p.100 (quoting 47 U.S.C. § 605(a)) (emphasis added). Plaintiff concludes it has made a proper complaint because it alleged it produced a live broadcast transmitted by satellite, that Defendants received without authorization, and used for their own benefit or the benefit of others. Id.

The undersigned observes, however, that Plaintiff has not alleged that Defendants' users were not authorized to receive the broadcast; nor has Plaintiff alleged that Defendants received the communication *by radio*. (Document No. 1). Rather, the Complaint clearly alleges that Justin.tv received Plaintiff's Live Broadcast from its users, by means of a live video stream(s) over the Internet through the www.justin.tv website. (Document No. 1, ¶¶ 20, 22-25, 27). Plaintiff fails to allege that Defendants received or assisted in receiving any communication by radio or satellite. See Joe Hands Promotions, Inc. v. WCI, Inc., 2011 WL 6755935 at * 4 (S.D.Ohio Dec. 22, 2011) (quoting Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc., 1998 WL 328316 at *4 (E.D.Pa. June 19, 1998) ("Where 'plaintiff has failed to put forth any affirmative evidence concerning the defendants' use of a satellite transmission[,]' such 'deficiency in the plaintiff's evidence entitles the defendants to judgment as a matter of law.'"). While Plaintiff does allege Justin.tv's users "had access to the broadcast by an authorized cable or satellite television provider," Plaintiff does not allege that Defendants had any access to the broadcast signal by radio, cable, or

13

satellite. (Document No. 1, p.5).

The Complaint also fails to expressly allege how Defendant YouTube received the disputed communication, but suggests that its reception was also via its users' use of the internet and its website, not satellite, radio, or cable.

Relevant caselaw, including those cases discussed above, all indicate that because Defendants did not intercept or receive a direct cable or satellite communication, Plaintiff fails to state a claim upon which relief may be granted as a matter of law under § 553 or § 605. Plaintiff has not identified any authority supporting a finding that receipt of a *retransmission* of a communication by computer or the internet creates liability under the Communications Act.

Certainly Plaintiff's frustration with the apparent retransmission of its Live Broadcast is understandable; however, the undersigned is not persuaded that the Communications Act provides the relief Plaintiff seeks against these Defendants. As such, the undersigned recommends that the Court decline to extend the scope of § 553 or § 605, and instead grant the motion to dismiss these claims.

2. **Applicability of Communications Decency Act**

Next, Defendants argue that even if the Communications Act is applicable, Plaintiff's claims are barred by § 230 (c) of the CDA. (Document No. 17, pp.7-12). The CDA states in part that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider." 47 U.S.C. § 230(c)(1).

Defendants contend that if the Communications Act is applicable here, Plaintiff's claims would have to be dismissed because they are premised on treating Defendants as the "publisher or speaker" of content created or developed by third parties." (Document No. 17, p.7).

Defendant Justin.tv apparently made this same argument in the Zuffa case. Zuffa, 838

14

F.Supp.2d at 1107-08. The court in Zuffa considered this issue to be "a novel question" and then concluded that because plaintiff Zuffa had "failed to state clams under the Cable Communications Act," it would "not address the novel issue the parties present of whether § 230 immunity would apply in such a case." Zuffa, 838 F.Supp.2d at 1108.

Defendants acknowledge that "there is no case that has applied Section 230 specifically in the context of claims under the Communications Act," and they contend that this is so "primarily because, . . . that statute is clearly inapplicable to the hosting of content on a website." (Document No. 17, p.12). Plaintiff argues that its claims under §§ 553 and 605 pertain to intellectual property, and therefore, CDA immunity does not apply. (Document No. 20, p.11) (quoting 47 U.S.C. § 230(e)(2)) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.")).

By the same reasoning followed in the Zuffa decision – that where a plaintiff has failed to state claims under the Communications Act, the Court need not address the novel issue of § 230 immunity – the undersigned recommends that a determination on the applicability of the CDA to this case is also unnecessary.

**C. Seventh Cause Of Action**

Finally, Defendants argue that Plaintiff's claim for inducement of copyright infringement must be dismissed because Plaintiff does not include "plausible allegations identifying a specific set of active steps that the defendant took with the specific purpose of inducing third parties to engage in copyright infringement." (Document No. 17, p.12). Defendants contend that Plaintiff does not offer a single factual allegation to support its claim. (Document No. 17, p.13). As such, Defendants argue that this claim does not meet the standard necessary to comply with Rule 8, Iqbal or Twombly. (Document No. 17, pp.13-14).

In response, Plaintiff argues that its claim is sufficient. (Document No. 20, pp.12-13). Plaintiff notes that the Complaint states that Defendant Justin.tv "provides detailed instructions on its website directing users how to stream live video over www.justin.tv." Id. (citing Document No. 1, ¶ 19). Plaintiff argues that viewed in the light most favorable to Plaintiff, the Complaint alleges an affirmative act taken by Justin.tv that could be viewed as an invitation to infringe copyrighted works. Id. However, Plaintiff makes no argument against dismissal of this claim as to Defendant YouTube, and does not oppose dismissal, preferably without prejudice, as to the inducement claim against YouTube. (Document No. 20, p.13).

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd, 545 U.S. 913 (2005), cited by both parties, describes inducement of infringement as follows:

> Evidence of "active steps ... taken to encourage direct infringement," . . . such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . .
>
> mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves. The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

Grokster, 545 U.S. at 936-37 (citations omitted).

The undersigned does not find that Plaintiff's one sentence allegation that "Justin.tv provides detailed instructions on its website directing users how to stream live video over the Internet through the www.justin.tv website" adequately supports a facially plausible claim that either Defendant is

16

liable for inducement of copyright infringement. See (Document No. 1). In fact, Plaintiff's allegation does no more than suggest that Justin.tv is providing instructions for use of its product for lawful purposes. Defendants' succinct analysis of this issue in the reply is persuasive:

> Plaintiff alleges no facts to suggest that Justin.tv intended to induce copyright infringement. Plaintiff alleges only that Justin.tv is a website that provides users the ability to stream live video and that Justin.tv provides instructions for users on how to stream live video over www.justin.tv. Compl. ¶¶ 17, 19. Plaintiff does not allege that Justin.tv provides those instructions with the intent to induce copyright infringement. Plaintiff does not quote or attach any instruction from Justin.tv's website that could provide even circumstantial evidence of intent to induce infringement. Plaintiff does not even assert a conclusory allegation that Justin.tv's instructions were intended to induce infringement. As a matter of law, that is insufficient to make out a viable claim of inducement.

(Document No. 21, pp.10-11).

Based on the foregoing, the undersigned will respectfully recommend that Plaintiff's Seventh Cause Of Action be dismissed pursuant to Rule 12(b)(6).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Joint Motion To Dismiss" (Document No. 16) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond

v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: August 28, 2012

David C. Keesler
United States Magistrate Judge